# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | CIVIL ACTION NO. _____ |
| CUSTOM AG COMMODITIES, LLC and | § | |
| DIVERSIFIED INGREDIENTS, INC., | § | |
| | § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff Colony Insurance Company ("Colony"), by and through its undersigned counsel, for this, its Complaint, shows the following:

### Nature of the Action

1.      This suit seeks a declaratory judgment that Colony has no obligation to defend or indemnify its policyholder Custom Ag Commodities, LLC ("Custom Ag") against claims brought by Diversified Ingredients, Inc. ("Diversified"), in the lawsuits styled *Nestle Purina Pet Care Company v. The Blue Buffalo Company Ltd.*, No. 4:14-cv-00859 in the United States District Court for the Eastern District of Missouri and *In Re: Blue Buffalo Company, Ltd. Marketing*, No. 4:14-cv-002562, in the same court (the "underlying lawsuits"). These will also be referred to herein as the '859 litigation and the '2562 litigation.

2.      There is a justiciable controversy between Colony and Defendants as to whether the general liability insurance policies issued by Colony to Custom Ag provide coverage for the claims asserted by Diversified in the underlying lawsuits. Diversified is a proper party to this lawsuit because its interests may be affected by the declaration sought herein, namely that Colony has no duty to pay any judgment or settlement it may obtain against Custom Ag.

**Complaint**                                                                                        Page 1 of 13

## Parties

3.      Colony is a citizen of the commonwealth of Virginia, being an insurance company formed in Virginia and having its principal place of business at 8720 Stony Point Pkwy, Suite 400, Richmond, Virginia 23235. Colony is authorized to write insurance policies in Texas as a surplus lines carrier.

4.      Custom Ag is a citizen of the state of Texas, being a limited liability company formed in Texas; having its principal place of business at 201 Lee Ray Drive, Winnsboro, Texas 75494; and each of its members being domiciled of the state of Texas.

5.      Diversified is a citizen of the state of Missouri, being a corporation incorporated in Missouri and having its principal place of business at 870 Woods Mill Road, Ballwin, Missouri 63011.

## Jurisdiction and Venue

6.      This is an action for declaratory judgment relief pursuant to 28 U.S.C. § 2201 *et seq*.

7.      This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is completely diverse, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

8.      Diversified has subjected itself to the jurisdiction of Texas courts because it purposely availed itself of the benefits and protections of Texas law by repeatedly engaging in business in Texas with a Texas company, Custom Ag. The exercise of jurisdiction over Diversified does not offend traditional notions of fair play and substantial justice.

9.      Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to this claim occurred in this district. Namely, Custom Ag conducts its

business, which is the subject of the underlying lawsuits, in this district, and the policies that are the subject of this coverage action were issued to Custom Ag in this district.

### The Underlying Lawsuits

10.     This insurance coverage action arises out of ongoing litigation concerning misrepresentations about the quality of premium dog food. Several lawsuits have been filed against Blue Buffalo Co., Ltd., alleging that Blue Buffalo marketed and sold premium dog food that it claimed did not contain chicken byproducts such as beaks and feathers, and other filler, when, in fact, it did. The '859 litigation was initiated by a competitor of Blue Buffalo, Nestle Purina Petcare Company. It seeks damages and injunctive relief for false advertising, disparagement and unfair trade practices. The '2562 litigation is a class action suit brought by Blue Buffalo customers alleging they were overcharged for premium dog food that was not up to the standards represented. The suits seek hundreds of millions of dollars.

11.     In each, Blue Buffalo third-partied Diversified, its supplier, alleging that it is responsible for supplying Blue Buffalo with the non-conforming dog food. Diversified, in turn, filed third-party complaints against Wilbur-Ellis Company ("Wilbur-Ellis") a distributor of chicken products, some of its employees, and Custom Ag, an intermediary between Wilbur-Ellis and Diversified.

12.     Diversified alleges that Custom Ag conspired over a number of years with Wilbur-Ellis to defraud Diversified and, ultimately, Blue Buffalo by passing off inferior pet food ingredients as premium pet food ingredients, and intentionally and fraudulently charging higher prices than the inferior goods were worth.

13.     For example, Diversified alleges that "Custom Ag, with knowledge of the conduct of Wilbur-Ellis, Haning, Rychlik and Harwell, [Wilbur-Ellis employees] sold goods to

Diversified that Wilbur-Ellis, Custom Ag, Geraci, Haning, Rychlik and Harwell had adulterated with a significant amount of by-product and feather meal and mislabeled it as chicken meal. The price Custom Ag paid for the goods from Wilbur-Ellis was, unbeknownst to Diversified, well below market price for chicken meal. To continue the scheme, Geraci and Custom Ag then, unbeknownst to Diversified, exorbitantly marked up the price for these adulterated goods so that the price which was paid by Diversified was market price for unadulterated chicken meal." Cause No. '859, Amended Third Party Complaint, at para. 28.

14.     Further, it is alleged: "Throughout its multiyear business relationship with Wilbur-Ellis and Custom Ag, Diversified ordered AAFCO-defined chicken meal (from Custom Ag) and turkey meal (from Custom Ag for a short period of time and then Wilbur-Ellis), but unknowingly received, instead, cheap low-grade meal blended with beaks, feet, viscera, feathers and other by-products as well as feather meal (the "Adulterated Meal") that Doug Haning, Geraci, Rychlik, Harwell, Custom Ag and Wilbur-Ellis (collectively, "Defendants") misrepresented as the products actually ordered." *Id.*, at para. 29.

15.     It is further alleged, "Geraci and Custom Ag billed Diversified for, and Diversified paid, market prices for genuine chicken meal. The scheme required Geraci to email contracts and hundreds of inflated invoices, which reflected market prices for unadulterated goods, for 'chicken meal blend' and 'low ash chicken meal blend' to Diversified, including a $24,706.72 invoice that Geraci emailed July 7, 2011, to McAtee at Diversified for 'chicken meal blend' and a Custom Ag invoice Geraci emailed May 13, 2014, to McAtee billing Diversified $27,897.32 for 'chicken meal blend' (the 'Invoices'). Upon information and belief, Geraci and Custom Ag knew that the product delivered was Adulterated Meal, and coordinated with Wilbur-

Ellis, Haning, Rychlik and Harwell through the Enterprise to mislead Diversified to materially falsify the Invoices." *Id.*, at para. 35.

16.     In sum, Diversified alleges, "Geraci, Doug Haning, Wilbur-Ellis, Custom Ag, Rychlik, Harwell, and others knew that (a) Wilbur-Ellis and Custom Ag knowingly sold mislabeled Adulterated Meal to Diversified and its customers in place of the contracted-for commodities; (b) the resulting illegal profits earned by Custom Ag and Wilbur-Ellis were exorbitant; (c) Custom Ag's millions of dollars in illicit profits from acting as a middleman and marking up the price for the Adulterated Meal it knowingly received from Wilbur-Ellis for distribution to Diversified was shared among the Defendants, and possibly others; (d) WilburEllis joined Custom Ag in the scheme in an attempt to add a layer of insulation from liability from mislabeling feed ingredients; and (e) the enterprise operated by Haning, Rychlik, Geraci, Harwell, Wilbur-Ellis and Custom Ag also used Diversified, a commodities broker and logistics company, to try to further insulate themselves from direct liability to Diversified's large number of pet food industry customers who unknowingly used the mislabeled Adulterated Meal in their products." *Id.* at para. 39.

17.     In addition, a separate scheme involving turkey meal is alleged, with similar intentional fraudulent conduct alleged, "On information and belief, the 'turkey meal blend' was Adulterated Meal. Defendants intentionally omitted any disclosure that the product's actual ingredients included goods other than turkey meal, in knowing and purposeful violation of state and federal feed ingredient laws and regulations. … As a result of Defendants' false statements, including mislabeling of Adulterated Meal, Diversified paid Custom Ag and Wilbur-Ellis market prices for genuine chicken meal and genuine turkey meal, supposedly meeting customer

ingredient specifications, but instead received mislabeled, adulterated and worthless or nearly worthless goods from the Rosser Facility." *Id.* at paras. 43-44.

18.     Recovery is sought under the RICO act, the Texas DTPA, common law fraudulent misrepresentation, fraudulent concealment, fraud in the inducement, breach of contract, breach of warranty, unjust enrichment, indemnity and contribution.

19.     The same allegations have been made by Diversified in the '2562 litigation, and the third party demand in '859 has been incorporated in Diversified's third party complaint therein. *See* paras. 7 – 11.

## Applying the Facts Alleged to the Colony Policies

20.     Colony issued four consecutive general liability insurance policies to Custom Ag. The first policy incepted on April 20, 2012, and the coverage was renewed annually through April 20, 2016.

21.     All policies have a $1,000,000 per-occurrence limit with a $2,000,000 aggregate limit.

22.     The policies provide coverage for damages because of bodily injury or property damage under Coverage A:

SECTION I – COVERAGES

COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

   a.     We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.

* * *

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

23.    The policies define "bodily injury," and "property damage:"

SECTION V – DEFINITIONS

3.    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

* * *

17.    "Property damage" means:

    a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

24.    There is no coverage under this part because none of the claims asserted by Diversified allege "bodily injury" or "property damage." Instead, the claims constitute a purely economic loss which is not property damage under Texas law. The claimants in the underlying case simply did not get the benefit of their bargain with Custom Ag and its co-parties. Liability insurance is not intended to and does not, in fact, protect the insured against claims that it passed off inferior products as premium products. Property is not physically injured merely by the incorporation of inferior ingredients or parts. *U.S. Metals, Inc. v. Liberty Mutual Group* __ S.W. 3d __, (Tex. Dec. 4, 2015).

25.    Further, the claims fall outside the policies' definition of an "occurrence" and within the policies' exclusion for Expected or Intended Injury, which provide:

13.    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

2.    Exclusions

This insurance does not apply to:

a.    Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

26.    Even if any of the loss claimed is held to constitute "bodily injury" or "property damage", the claims are not covered because the losses were not caused by an "occurrence" and are excluded by the Expected or Intended Injury Exclusion. The fraudulent conspiracy detailed in the underlying suit can in no way be construed as an "accident," and the damage — deceiving the claimants into pay a premium price for inferior pet food — was obviously an intended or expected result.

27.    Even if Diversified's claims constitute "bodily injury" or "property damage" caused by an "occurrence" the policies include several other exclusions that bar coverage in whole or in part.

28.    First, damage to the Insured's "product" is excluded from coverage. The policies exclude:

k.    Damage To Your Product

"Property damage" to "your product" arising out of it or any part of it.

29.    "Your product" is defined in pertinent part as (emphasis added):

21."Your product":

a.    Means:

(1)    Any goods or products, other than real property, **manufactured, sold, handled, distributed** or disposed of by:

(a)    You;

(b)    Others trading under your name; or

(c)    A person or organization whose business or assets you have acquired; and

(2)    **Containers** (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b.    Includes:

(1)    **Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"**; and

(2)    The providing of or failure to provide warnings or instructions.

30.    The underlying complaints allege that the Custom Ag manufactured, sold, handled, or distributed the chicken and turkey meal to Diversified and warranted the meal's quality and fitness, which means the meal is Custom Ag's "product." Therefore, Diversified's claims are excluded by the Damage to Your Product Exclusion.

31.    In addition, the policies exclude coverage for damage to "impaired property" or to property that is not physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your [Custom Ag's] product" or its failure to perform a contract in accordance with its terms. Specifically, the policies exclude:

m.    Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

(1)    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

(2)     A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

32.     The term "Impaired Property," is defined as:

8.      "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

a.      It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

b.      You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

33.     Diversified's claims are excluded by this exclusion.

34.     The policies exclude coverage for liability assumed by contract. Specifically, they

exclude:

b.      Contractual Liability

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages

(1)     That the insured would have in the absence of the contract or agreement; or

(2)     Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a)     Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

(b)     Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

35.     Diversified's claims against Custom Ag are excluded by the Contractual Liability Exclusion because the underlying complaint alleges claims based on Custom Ag's assumed contractual liability.

36.     The policies exclude coverage for damage to personal property in the care, custody, or control of the insured. Specifically, they exclude:

j.      Damage to Property

"Property damage" to:

* * *

(4)     Personal property in the care, custody or control of the insured;

37.     According to the complaint, Diversified ordered chicken and turkey meal from or through Custom Ag. To the extent the meal was "damaged" while in the control of Custom Ag, this exclusion applies.

38.     The policies also exclude coverage for recalled products or impaired property. Specifically, they exclude:

n.      Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1)     "Your product";

(2)     "Your work"; or

(3)     "Impaired property";

**Complaint**                                                              Page 11 of 13

if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

39.     The Recall Of Products, Work Or Impaired Property Exclusion would bar coverage to the extent the claim is one for withdrawal of the product from market.

40.     The policies cover "personal and advertising injury" under Coverage B.

41.     There is no coverage under this part because Diversified has not alleged any of the enumerated offenses listed in the definition of "personal and advertising injury."

42.     The same reasons that negate Colony's duty to defend negate any possibility that Colony will have a duty to indemnify Custom Ag, and Colony is entitled to a judicial declaration to that effect.

<strong>Reservation of Right to Amend</strong>

43.     Colony reserves the right to amend this Complaint as necessary to add additional claims that may be made against Defendants.

<strong>Relief Sought</strong>

44.     Colony seeks a declaration that it has no duty to defend Custom Ag in the underlying lawsuits and a declaration that Colony has no duty to indemnify Custom Ag for any liability assessed.

**WHEREFORE**, Colony prays for such relief and any other and further relief, at law or in equity, to which it may show itself justly entitled.

Respectfully submitted,


  /s/ John C. Tollefson
John C. Tollefson
State Bar No. 20109400
johnt@tbmmlaw.com
Stephen A. Melendi
State Bar. No. 24041468

stephenm@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone:        214-665-0100
Facsimile:        214-665-0199

ATTORNEYS FOR PLAINTIFF,
COLONY INSURANCE COMPANY