EXHIBIT 1

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| COLONY INSURANCE COMPANY, | § § § § § § § § § § § | |
| Plaintiff, | | |
| v. | | CIVIL ACTION NO. |
| CUSTOM AG COMMODITIES, LLC and DIVERSIFIED INGREDIENTS, INC., | | 4:16-cv-00083-ALM-CAN |
| Defendants. | | |

**FIRST AMENDED COMPLAINT**

Plaintiff Colony Insurance Company ("Colony"), by and through its undersigned counsel, for this, its First Amended Complaint, shows the following:

**Nature of the Action**

1. This suit seeks a declaratory judgment that Colony has no obligation to defend or indemnify its policyholder Custom Ag Commodities, LLC ("Custom Ag") against claims brought by Diversified Ingredients, Inc. ("Diversified"), in the lawsuits styled *Nestle Purina Pet Care Company v. The Blue Buffalo Company Ltd.*, No. 4:14-cv-00859 in the United States District Court for the Eastern District of Missouri and *In Re: Blue Buffalo Company, Ltd. Marketing*, No. 4:14-md-002562, in the same court (the "underlying lawsuits"). These will also be referred to herein as the '859 litigation and the '2562 litigation.

2. There is a justiciable controversy between Colony and Defendants as to whether the general liability insurance policies issued by Colony to Custom Ag provide coverage for the claims asserted by Diversified in the underlying lawsuits. Diversified is a proper party to this

lawsuit because its interests may be affected by the declaration sought herein, namely that Colony has no duty to pay any judgment or settlement it may obtain against Custom Ag.

## Parties

3. Colony is a citizen of the commonwealth of Virginia, being an insurance company formed in Virginia and having its principal place of business at 8720 Stony Point Pkwy, Suite 400, Richmond, Virginia 23235. Colony is authorized to write insurance policies in Texas as a surplus lines carrier.

4. Custom Ag is a citizen of the state of Texas, being a limited liability company formed in Texas; having its principal place of business at 201 Lee Ray Drive, Winnsboro, Texas 75494; and each of its members being domiciled of the state of Texas. Custom Ag has appeared through counsel.

5. Diversified is a citizen of the state of Missouri, being a corporation incorporated in Missouri and having its principal place of business at 870 Woods Mill Road, Ballwin, Missouri 63011. Diversified has appeared through counsel.

## Jurisdiction and Venue

6. This is an action for declaratory judgment relief pursuant to 28 U.S.C. § 2201 *et seq*.

7. This Court has subject matter jurisdiction over this dispute pursuant to 28 U.S.C. § 1332(a)(1) because the citizenship of the parties is completely diverse, and the amount in controversy exceeds $75,000, exclusive of costs and interest.

8. Diversified has subjected itself to the jurisdiction of Texas courts because it purposely availed itself of the benefits and protections of Texas law by repeatedly engaging in

business in Texas with a Texas company, Custom Ag. The exercise of jurisdiction over Diversified does not offend traditional notions of fair play and substantial justice.

9. Venue is appropriate under 28 U.S.C. § 1391(b)(2) because a substantial part of the events that gave rise to this claim occurred in this district. Namely, Custom Ag conducts its business, which is the subject of the underlying lawsuits, in this district, and the policies that are the subject of this coverage action were issued to Custom Ag in this district.

## The Underlying Lawsuits

10. This insurance coverage action arises out of ongoing litigation concerning misrepresentations about the quality of premium dog food. Several lawsuits have been filed against Blue Buffalo Co., Ltd., alleging that Blue Buffalo marketed and sold premium dog food that it claimed did not contain chicken byproducts such as beaks and feathers, and other filler, when, in fact, it did. The '859 litigation was initiated by a competitor of Blue Buffalo, Nestle Purina Petcare Company. It seeks damages and injunctive relief for false advertising, disparagement and unfair trade practices. The '2562 litigation is a class action suit brought by Blue Buffalo customers alleging they were overcharged for premium dog food that was not up to the standards represented.

11. In each, Blue Buffalo third-partied Diversified, its supplier, alleging that it is responsible for supplying Blue Buffalo with the non-conforming dog food. Diversified, in turn, filed third-party complaints against Wilbur-Ellis Company ("Wilbur-Ellis") a distributor of chicken and turkey products, some of its employees, and Custom Ag, an intermediary between Wilbur-Ellis and Diversified. On April 19, 2016 the underlying Court granted in part and denied in part motions to dismissed filed by Custom Ag, Wilbur-Ellis, and others. The Court also ordered Diversified to file an amended cross complaint no later than May 20, 2016 that reflected

the court's dismissal of several claims. Diversified did so. Diversified's Third Amended Crossclaim and Third-Party Complaint altered the legal causes of action asserted and amplified the predicate facts asserted. All of the allegations of the '859 Third Amended Crossclaim and Third Party Complaint, and any amended claims thereto, along with the "live" crossclaim and third party complaints filed by Diversified against Custom Ag in '2562 are incorporated by reference herein.

12.  Diversified alleges that, beginning in 2011, Custom Ag, through its owner and managing member, Troy Geraci, conspired over a number of years with Wilbur-Ellis to defraud Diversified and, ultimately, Blue Buffalo by passing off inferior pet food ingredients as premium pet food ingredients, and intentionally and fraudulently charging higher prices than the inferior goods were worth.

13.  Diversified alleges that, beginning in May 2011, it contracted for chicken meal but received goods that Wilbur-Ellis, Custom Ag, [Troy] Geraci, and others had adulterated with significant amounts of by-product and feather meal but were mislabeled as chicken meal. Diversified's No. '859 Third Am. Compl. ¶¶ 35-46. Diversified also alleges that "[t]he price Custom Ag paid for the goods from Wilbur-Ellis was, unbeknownst to Diversified, well below market price for chicken meal," and that "[t]o continue the scheme, Geraci and Custom Ag then, unbeknownst to Diversified, exorbitantly marked up the price for these adulterated goods so that the price which was paid by Diversified was market price for unadulterated chicken meal."[1] *Id*. ¶ 44-45.

14.  In addition, Diversified alleges: "Throughout its multiyear business relationship with Wilbur-Ellis and Custom Ag, Diversified ordered AAFCO-defined chicken meal (from

---

[1] Although Colony quotes for illustrative purposes various parts of the underlying pleadings, it relies on the entirety of the pleadings.

**First Amended Complaint** Page 4 of 19

Custom Ag) and turkey meal (from Custom Ag for a short period of time and then Wilbur-Ellis), but unknowingly received, instead, either (a) cheap low-grade chicken meal or turkey meal adulterated with beaks, feet, viscera, feathers and other by-products and by-product meal as well as feather meal, and other adulterants or (b) no chicken meal or turkey meal whatsoever, but instead a product comprised of by-product meal adulterated or mixed with feather meal, and other non-chicken meal products and adulterants (collectively, the 'Adulterated Meal') that Custom Ag and Wilbur-Ellis (collectively, 'Defendants') through their agents and employees Doug Haning, Geraci, Rychlik, and Harwell, misrepresented as the products and goods actually ordered." *Id.* ¶ 46.

15. Diversified alleges that Diversified emailed the Blue Buffalo specifications to Geraci, and that Geraci, beginning on June 10, 2011, acknowledged the applicable specifications and began the process of knowingly supplying non-conforming product, with the complicity of Wilbur-Ellis and Doug Haning, a manager/officer of that entity. Specifically, it alleges, "Geraci and Custom Ag billed Diversified for, and Diversified paid, market prices for genuine chicken meal. The scheme required Geraci to email contracts and hundreds of inflated invoices, which reflected market prices for unadulterated goods, for 'chicken meal blend' and 'low ash chicken meal blend' to Diversified (the 'Custom Ag Contracts'), including a $24,706.72 invoice that Geraci emailed July 7, 2011, to McAtee at Diversified for 'chicken meal blend' and a Custom Ag invoice Geraci emailed May 13, 2014, to McAtee billing Diversified $27,897.32 for 'chicken meal blend' (the 'Invoices')." *Id.* ¶ 52. It is alleged that this scheme continued on for years afterward.

16. In sum, Diversified alleges, "Defendants and others knew that (a) Wilbur-Ellis and Custom Ag knowingly sold mislabeled Adulterated Meal to Diversified and its customers in

place of the contracted-for commodities; (b) the resulting illegal profits earned by Custom Ag and Wilbur-Ellis were exorbitant; (c) Custom Ag's millions of dollars in illicit profits from acting as a middleman and marking up the price for the Adulterated Meal it knowingly received from Wilbur-Ellis for distribution to Diversified were potentially shared among the Defendants, and possibly others; and (d) Wilbur-Ellis joined Custom Ag in the scheme in an attempt to add a layer of insulation from liability from mislabeling feed ingredients. *Id*. ¶ 59.

17. In addition, a separate scheme involving turkey meal is alleged, with similar intentional fraudulent conduct alleged, "the 'turkey meal blend' was Adulterated Meal. Defendants omitted any disclosure that the product's actual ingredients included ingredients other than turkey meal, in knowing and purposeful violation of state and federal feed ingredient laws and regulations. . . As a result of Defendants' false statements, including mislabeling of Adulterated Meal, Diversified paid Custom Ag and Wilbur-Ellis market prices for genuine chicken meal and genuine turkey meal, supposedly meeting Blue Buffalo ingredient specifications, but instead received mislabeled, adulterated and worthless or nearly worthless goods from the Rosser Facility." *Id*. ¶¶ 64-65.

18. Diversified alleges express and implied warranty claims, statutory deceptive trade practice claims, unjust enrichment, equitable indemnity, and contribution.

19. The same underlying facts have been alleged by Diversified in the '2562 litigation. In fact, Custom Ag moved to dismiss or sever Diversified's '2562 claims on the basis that they were identical to those made in the '859 case.

**Applying the Facts Alleged to the Colony Policies**

20. Colony issued four consecutive general liability insurance policies to Custom Ag. The first policy incepted on April 20, 2012, and the coverage was renewed annually through April 20, 2016.

21. All policies have $1,000,000 per-occurrence, products/completed operations, and personal and advertising injury limits, with $2,000,000 general aggregate and products/completed operations aggregate limits.

22. The policies provide coverage for damages because of "bodily injury" and "property damage" under Coverage A:

> SECTION I – COVERAGES
>
> COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY
>
> 1. Insuring Agreement
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the Insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
>
>    (1) The amount we will pay for damages is limited as described in Section III – Limits Of Insurance; and
>
>    (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.
>
>    \* \* \*
>
>    b. This insurance applies to "bodily injury" and "property damage" only if:

**First Amended Complaint**

      (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2) The "bodily injury" or "property damage" occurs during the policy period; and

      (3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

    c. "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    d. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

      (1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

      (2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

      (3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

23.    Paragraph 1. of Section II provides:

"If you are . . . c. A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers."

24.    The policies define "bodily injury," and "property damage:"

**First Amended Complaint**                                                                                     Page 8 of 19

SECTION V – DEFINITIONS

> 3. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.
>
> * * *
>
> 17. "Property damage" means:
>
>     a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
>
>     b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

There is no coverage under this part because all of the requirements of the insuring agreement have not been met.

25. None of the claims asserted by Diversified allege "bodily injury" or "property damage." Instead, the claims constitute a purely economic loss, which is not property damage under Texas law. The claimants in the underlying case simply did not get the benefit of their bargain with Custom Ag and its co-parties. Liability insurance is not intended to and does not, in fact, protect the insured against claims that it passed off inferior products as premium products. Property is not physically injured merely by the incorporation of inferior ingredients or parts.

26. Further, the claims fall outside the policies' definition of an "occurrence" and within the policies' exclusion for Expected or Intended Injury, which provide:

> 13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.
>
> * * *
>
> 2. Exclusions
>
>    This insurance does not apply to:
>
>    a. Expected Or Intended Injury

**First Amended Complaint** Page 9 of 19

> "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

Even if any of the loss claimed is held to constitute "bodily injury" or "property damage," the claims are not covered because the losses were not caused by an "occurrence" and are excluded by the Expected Or Intended Injury exclusion. The fraudulent scheme detailed in the underlying suit can in no way be construed as an "accident," and the damage — deceiving the claimants into pay a premium price for inferior pet food — was obviously an intended or expected result.

27. Further, the policies cover "property damage" or "bodily injury" only if they take place within the effective dates of each policy, and do not cover losses that commenced prior to the inception of each policy. The losses do not fall meet the requirements of the policies' insuring agreements, paragraphs 1.b, 1.c, 1.d, and they are barred by the doctrines of fortuity, known loss, and/or loss in progress. The losses alleged in Diversified's Third Amended Cross Claim are alleged to have commenced prior to the inception of each policy, and there is no coverage for any of the losses as a result. In addition, the losses were known to Custom Ag and its principals, managers and/or members, prior to the inception of the first policy, barring all coverage.

28. Even if Diversified's claims constitute "bodily injury" or "property damage" caused by an "occurrence" the policies include several other exclusions that bar coverage in whole or in part.

29. First, damage to the Insured's "product" is excluded from coverage. The policies exclude:

> k. Damage To Your Product
>
> "Property damage" to "your product" arising out of it or any part of it.

30. "Your product" is defined in pertinent part as (emphasis added):

21 "Your product":

a. Means:

(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

(a) You;

(b) Others trading under your name; or

(c) A person or organization whose business or assets you have acquired; and

(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

(2) The providing of or failure to provide warnings or instructions.

The underlying complaints allege that the Custom Ag manufactured, sold, handled, or distributed the chicken and turkey meal to Diversified and warranted the meal's quality and fitness, which means the meal is Custom Ag's "product." Therefore, Diversified's claims are excluded by the Damage to Your Product Exclusion.

31. In addition, the policies exclude coverage for damage to "impaired property" or to property that is not physically injured, arising out of a defect, deficiency, inadequacy or dangerous condition in "your [Custom Ag's] product" or its failure to perform a contract in accordance with its terms. Specifically, the policies exclude:

m. Damage To Impaired Property Or Property Not Physically Injured

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**First Amended Complaint**  Page 11 of 19

      (1) A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work"; or

      (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

    This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

32.    The term "Impaired Property," is defined as:

    8. "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

      a. It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

      b. You have failed to fulfill the terms of a contract or agreement;

    if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

Diversified's claims are excluded by exclusion m.

33.    The policies exclude coverage for liability assumed by contract. Specifically, they exclude:

    b. Contractual Liability

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages

      (1) That the insured would have in the absence of the contract or agreement; or

      (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

      (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

      (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Diversified's claims against Custom Ag are excluded by the Contractual Liability Exclusion because the underlying complaint alleges claims based on Custom Ag's assumed contractual liability.

    34.    The policies exclude coverage for damage to personal property in the care, custody, or control of the insured. Specifically, they exclude:

      j.   Damage to Property

      "Property damage" to:

            * * *

      (4) Personal property in the care, custody or control of the insured;

According to the complaint, Diversified ordered chicken and turkey meal from or through Custom Ag. To the extent the meal was "damaged" while in the control of Custom Ag, this exclusion applies.

    35.    The policies also exclude coverage for recalled products or impaired property. Specifically, they exclude:

      n.   Recall Of Products, Work Or Impaired Property

      Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

      (1) "Your product";

      (2) "Your work"; or

      (3) "Impaired property";

**First Amended Complaint**                                                            Page 13 of 19

>> if such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

The Recall Of Products, Work Or Impaired Property Exclusion would bar coverage to the extent the claim is one for withdrawal of the product from market.

36. The policies cover "personal and advertising injury" under Coverage B. The insuring agreement for this part provides:

> 1. Insuring Agreement:
>
>    a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "personal and advertising injury" to which this insurance does not apply. We may, at our discretion, investigate any offense and settle any claim or "suit" that may result.
>
>    \* \* \*
>
>    b. This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

37. "Personal and advertising injury" is defined:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>
>     a. False arrest, detention or imprisonment;
>
>     b. Malicious prosecution;
>
>     c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

      d. Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

      e. Oral or written publication, in any manner, of material that violates a person's right of privacy;

      f. The use of another's advertising idea in your "advertisement"; or

      g. Infringing upon another's copyright, trade dress or slogan in your "advertisement".

There is no coverage under this part because Diversified has not alleged any of the enumerated offenses listed in the definition of "personal and advertising injury."

38. The policies cover only "personal and advertising injury" caused by offenses that take place within the effective dates of each policy. The offense alleged is of a continuing nature and began well before the inception of the first Colony policy, barring all coverage. In the alternative, only the policy in effect at the time of each offense, if any, is triggered. In addition, Custom Ag and its principals, including Troy Geraci, had knowledge of the scheme and the damage it was causing prior to the inception of the Colony's first policy, barring all coverage under the terms of the polices and the fortuity, known loss, and/or loss in progress doctrines.

39. Further, several exclusions bar the claim from coverage under Coverage B, even if "personal and advertising injury" or an "advertisement" were alleged (which Colony disputes). The policy excludes:

      a. Knowing Violation Of Rights Of Another

      "Personal and advertising injury" caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict "personal and advertising injury".

The underlying pleadings allege that Custom Ag knowingly engaged in a scheme to defraud Diversified and its downstream customers. Custom Ag knew that the acts committed by it or its

principal officers or members would violate Diversified's rights and inflict "personal and advertising injury." Therefore, the Knowing Violation Of Rights Of Another exclusion bars coverage for the claim.

    40.    The policy also excludes:

        b.  Material Published With Knowledge Of Falsity

        "Personal and advertising injury" arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity.

Diversified's loss arose out of Custom Ag's publication of false information about its product with knowledge of its falsity; therefore, the exclusion precludes coverage for the claim.

    41.    Further, the policy contains the following applicable exclusion:

        c.  Material Published Prior To Policy Period

        "Personal and advertising injury" arising out of oral or written publication of material whose first publication took place before the beginning of the policy period.

Diversified's damages arose out of information first published prior to the inception of the each policy, and the claim is therefore not covered.

    42.    Also excluded are:

        d.  Criminal Acts

        "Personal and advertising injury" arising out of a criminal act committed by or at the direction of the insured.

Diversified's losses arose out of criminal activity, including but not limited to Texas Penal Code § 32.42, committed by or at the direction of Custom Ag, and the Criminal Acts exclusion bars coverage for the claim.

    43.    The policy excludes damages arising from:

        e.  Contractual Liability

> "Personal and advertising injury" for which the insured has assumed liability in a contract or agreement. This exclusion does not apply to liability for damages that the insured would have in the absence of the contract or agreement.

Custom Ag's liability arises out of a contractual assumption of liability; this exclusion negates coverage.

44. The policy also excludes coverage for damages arising out of:

   f. Breach Of Contract

   "Personal and advertising injury" arising out of a breach of contract, except an implied contract to use another's advertising idea in your "advertisement".

Diversified's loss arose out of Custom Ag's breaching its contract, and the Breach Of Contract Exclusion bars coverage.

45. The policy also excludes:

   g. Quality Or Performance Of Goods – Failure To Conform To Statements

   "Personal and advertising injury" arising out of the failure of goods, products or services to conform with any statement of quality or performance made in your "advertisement."

Diversified's damages arose out of the fact that Custom Ag's product was not of the quality promised. Therefore, this exclusion precludes coverage for Diversified's claims.

46. The policy excludes:

   h. Wrong Description Of Prices

   "Personal and advertising injury" arising out of the wrong description of the price of goods, products or services stated in your "advertisement".

47. This exclusion bars the claim because Diversified's damages arise out of Custom Ag's wrong description of the price of its goods or products.

**First Amended Complaint**

**Declaration Regarding Duty to Indemnify**

48.     The same reasons that negate Colony's duty to defend negate any possibility that Colony will have a duty to indemnify Custom Ag, and Colony is entitled to a judicial declaration to that effect.

49.     In the alternative, in the event that the Court deems it necessary to await the adjudication or settlement of the underlying case(s), Colony asserts that it has no duty to indemnify Custom Ag for the reasons set out herein, at the appropriate time, and in the further alternative, a declaration allocating covered and non-covered claims and damages, and for an adjudication of the applicable policy and limits, if any.

50.     In the further alternative, the damage alleged arise from a single occurrence, product or offense, and Colony's exposure, if any, is limited to the occurrence, product or personal injury/advertising injury limit of a single policy, or the applicable aggregate of a single policy. See Policies' Section III – Limits of Insurance.

51.     In the further alternative, in the event other insurance applies to the losses, Colony pleads that it is entitled to the benefit of the "Other Insurance" provisions of the policies, both as to the duty to defend and as to the duty to indemnify.

**Reservation of Right to Amend**

52.     Colony reserves the right to amend this Complaint as necessary to add additional claims that may be made against Defendants.

**Relief Sought**

53.     **WHEREFORE**, Colony seeks a declaration that it has no duty to defend Custom Ag in the underlying lawsuits and a declaration that Colony has no duty to indemnify Custom Ag for any liability assessed, in the alternative, for an allocation of covered and non-covered claims

or damages, a declaration as to the applicable limit and/or policy and application of "other insurance" provisions, and for any other and further relief, at law or in equity, to which it may show itself justly entitled.

        Respectfully submitted,

    /s/ John C. Tollefson
John C. Tollefson
State Bar No. 20109400
johnt@tbmmlaw.com
Stephen A. Melendi
State Bar. No. 24041468
stephenm@tbmmlaw.com
Tollefson Bradley Mitchell & Melendi, LLP
2811 McKinney Avenue, Suite 250
Dallas, Texas 75204
Telephone:     214-665-0100
Facsimile:      214-665-0199

ATTORNEYS FOR PLAINTIFF,
COLONY INSURANCE COMPANY

## CERTIFICATE OF SERVICE

I hereby certify that on the _____ day of June 2016, a true copy of the foregoing was served on the following counsel of record pursuant to the Federal Rules of Civil Procedure:

Charles W. Fillmore
The Fillmore Law Firm, L.L.P.
901 Lake Street
Fort Worth, TX 76102

**ATTORNEY FOR DEFENDANT
CUSTOM AG COMMODITES, LLC**

Howard J. Klatsky
FEE, SMITH, SHARP &VITULLO, L.L.P
Three Galleria Tower
13155 Noel Road, Suite 1000
Dallas, Texas 75240

**ATTORNEY FOR DEFENDANT
DIVIERSIFIED INGREDIENTS, INC.**

    */s/ John C. Tollefson*
John C. Tollefson

**First Amended Complaint**      Page 19 of 19